**In the Matter of Frank J. PALMER, d/b/a Palmer Plumbing and Heating, Debtor.**

**Bankruptcy No. 185–50639.**

United States Bankruptcy Court, E.D. New York.

Oct. 15, 1987.

Ronald B. Losner, Staten Island, N.Y., for debtor.

Paul I. Krohn, Brooklyn, N.Y., trustee.

John G. Hall, Staten Island, N.Y., for Angela Palmer/Matrimonial Matter.

Marjorie Weinberg-Rooney Staten Island, N.Y., for Frank Palmer/Matrimonial Matter.

## DECISION

MARVIN A. HOLLAND, Bankruptcy Judge:

This decision addresses the extent to which a bankruptcy court can, and the extent to which it should impose itself upon a state court matrimonial proceeding. The questions arise in the context of a matrimonial proceeding in which the debtor's spouse requests equitable distribution of assets to which the debtor has legal title and which would have been available for liquidation and distribution to the debtor's creditors but for the existence of the matrimonial proceeding.

## FACTS

The debtor, Frank Palmer, was married to Angela Palmer on June 16, 1963 in Staten Island, New York. There is one issue of the marriage, Frank Palmer, Jr., born February 10, 1975. Frank Palmer and Angela Palmer own the "marital premises", at 153 Giffords Lane, Staten Island, New York, as tenants by the entireties where they resided together as husband and wife until Frank Palmer, Sr. moved out in May of 1979.

In 1981 Frank Palmer Sr. commenced an action for divorce against Angela Palmer in the Supreme Court of Richmond County on the grounds of cruel and inhuman treatment. Angela Palmer counter-claimed for divorce on the grounds of cruel and inhuman treatment seeking custody of the infant, Frank Palmer, Jr., child support, ex-

clusive possession of the marital residence, equitable distribution of marital property title to which was held by Frank Palmer Sr., and attorneys' fees.

At the time of the commencement of this action Frank Palmer, Sr. was the sole proprietor of a business known as Frank Palmer, Jr. d/b/a Palmer Plumbing and Heating, which employed Angela Palmer.

In December of 1984 Internal Revenue Service filed tax liens against Frank Palmer, Sr. in the approximate amount of $4,000.00, and attached his business checking account and business savings accounts. Angela Palmer was awarded temporary custody, maintenance and child support. In January of 1985 Angela Palmer moved in the Supreme Court for arrears, medical expenses and ancillary relief; Frank Palmer cross-moved for a determination of the issues of equitable distribution, maintenance, and child support. Thereafter, in February of 1985, the Internal Revenue Service levied upon all the vehicles and equipment belonging to the debtor. In April of 1985 an application was made in the Supreme Court by Angela Palmer to collect certain arrearages from Frank Palmer.

On or about May 29, 1985, Frank Palmer's attorneys, in opposition to Angela Palmer's motion, served their papers indicating that Mr. Palmer had filed a bankruptcy petition on May 8, 1985 and that the automatic stay pursuant to 11 U.S.C. § 362 was in effect. On June 10, 1985 Justice Thomas R. Sullivan, Supreme Court, Richmond County, granted Angela Palmer a money judgment for support arrears and mortgage payment reimbursement. An Order was entered on this decision on July 3, 1985. On September 24, 1985, Angela Palmer moved in the Bankruptcy Court for relief from the Section 362 stay in order to allow her to make an additional application for support arrears and to permit the hearing on equitable distribution, possession of the marital premises and possession of items of personal property to be resolved in the State Court.

On October 9, 1985, this court signed an Order permitting Angela Palmer to proceed with the motion in the state matrimonial court for support arrears, reimbursement for other items with collection of any sums awarded thereon limited to the post-petition earnings of the debtor, Frank Palmer, Sr.

On November 5, 1985 both of the parties appeared before this court and submitted an appraisal setting down the fair market value of the premises at $145,000. None of the parties hereto has objected to such appraisal. Further, this court had given both parties additional time to obtain and submit alternate appraisals in the event that the value set forth therein was substantially disputed. Neither has done so. We will assume that amount to be the value of the premises for purposes of this decision.

Angela Palmer's application for enforcement of support arrears and Frank Palmer's cross-motion for a downward modification of the court's prior support order were resolved by order of Justice Charles A. Kuffner, which on December 2, 1985, denied the debtor's motion and granted the wife judgment of $2,832.56, plus interest and costs.

Angela Palmer would now like to proceed in the Supreme Court of Richmond County for a determination of equitable distribution of her rights in and to those assets, title to which is in the name of Frank Palmer, Sr. Angela Palmer asserts that those assets are marital property, therefore subject to her rights of equitable distribution.

The debtor thus finds himself in two different courts, each of which seek to adjudicate the rights of others in and to property to which he holds title: the state matrimonial court and the federal bankruptcy court. One of the objectives of the bankruptcy code is to give the debtor a fresh start, while that of the state matrimonial court is to provide the non-debtor spouse with adequate means for support. To what extent does the Bankruptcy Court have jurisdiction over the debtor's property against which his spouse seeks any equitable award? To what extent does the state matrimonial court have jurisdiction over assets of the debtor which may consist

of property of the estate and what are the criteria and guidelines upon which such decision will be made?

 The Bankruptcy Court is one of the narrowly circumscribed jurisdiction. It functions only to the extent necessary to protect the debtor, its creditors, or the estate. A bankruptcy court is not a court of general jurisdiction where any matter involving a present or former debtor may be adjudicated. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). "A bankruptcy court should not assume jurisdiction over a matter that does not [necessarily] involve the administration of, or property of a bankrupt estate." *In re Ennis*, 50 B.R. 119, 121 (Bkrtcy.Nev.1985).

Moreover, since "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States," *In re Burrus*, 136 U.S. 586, 593–594, 10 S.Ct. 850, 852, 853, 34 L.Ed. 500 to the extent that no overriding compelling federal question exists, federal courts will not interject themselves into a state court matrimonial proceeding. *Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930).

 Indeed, to the extent that the state matrimonial court adjudicates personal rights, custodial relationships, and property entitlements, not only is there no overriding compelling federal question, but except to the extent specifically enumerated in 28 U.S.C. § 157, the bankruptcy court clearly has no jurisdiction to adjudicate such matters. 28 U.S.C. § 157.

Therefore, since the state matrimonial court is the only forum competent to adjudicate the respective responsibilities, obligations and property entitlement of the parties before it, to the extent that its pronouncements do not affect property of the estate or dischargeable obligations of the debtor, we will not interfere with that court's customary processes.

 It is with the distribution of property of the estate as defined in 11 U.S.C. § 541(a)*, however, that the federal question arises. 28 U.S.C. § 1334 gives the district court exclusive jurisdiction over both property of the estate and property of the debtor. The standing order of reference of the United States District Court for the Eastern District of New York dated August 28, 1986, effective July 10, 1984, issued pursuant to 28 U.S.C. § 157(a), refers the debtor's title 11 case to this court together with the district court's preemptive jurisdiction over property, thus precluding its disposition in the matrimonial court. As stated by The Supreme Court in

---

* "Property of the estate" is defined in 11 U.S.C. § 541(a) as follows:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor's spouse in community property as of the commencement of that case that is—

(A) under the sole, equal or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553 or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under sections 510(c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

*Ridgway v. Ridgway,* 454 U.S. 46, 102 S.Ct. 49, 54, 70 L.Ed.2d 39 (1981):

Notwithstanding the limited application of federal law in the field of domestic relations generally, see *McCarty v. McCarty,* 453 U.S. 210, 220, 101 S.Ct. 2728, 2735, 69 L.Ed.2d 589 (1981); *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979); *In re Burrus,* 136 U.S. 586, 593–594, 10 S.Ct. 850, 852–853, 34 L.Ed. 500 (1890), this court, even in that area, has not hesitated to protect, under the Supremacy Clause, rights and expectancies established by federal law against the operation of state law, or to prevent the frustration and erosion of the congressional policy embodied in the federal rights. See *McCarty v. McCarty,* supra; *Hisquierdo v. Hisquierdo,* supra; *Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); *Wissner v. Wissner,* 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950); *McCune v. Essig,* 199 U.S. 382, 26 S.Ct. 78, 50 L.Ed. 237 (1905); Cf. *Yiatchos v. Yiatchos,* 376 U.S. 306, 309, 84 S.Ct. 742, 744, 11 L.Ed.2d 724 (1964). While "[s]tate family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden," *Hisquierdo,* 439 U.S. at 581, 99 S.Ct. at 808, with references to *United States v. Yazell,* 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966), "[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail." *Free v. Bland,* 369 U.S., at 666, 82 S.Ct. at 1092. See also *Gibbons v. Ogden,* 9 Wheat. 1, 210–211, 6 L.Ed. 23 (1824). And, specifically, a state divorce decree, like other law governing the economic aspects of domestic relations, must give way to clearly conflicting federal enactments. *McCarty v. McCarty,* supra; *Hisquierdo v. Hisquierdo,* supra. That principle is but the necessary consequences of the Supremacy Clause of our National Constitution.

Clearly, then, while the adjudication of all rights, duties, and entitlements as between the debtor and the spouse are within the exclusive province of the state matrimonial court, it is within the exclusive province of the bankruptcy court to adjudicate the rights of creditors as against property of the debtor and property of the estate. To the extent that the state matrimonial court adjudicates an equitable distribution in favor of the non-debtor spouse, such award becomes a claim within the context of 11 U.S.C. § 101(9). The non-debtor spouse's claim is an entitlement against the debtor's estate, and thus she becomes one of the general unsecured creditors of the estate.

While the matrimonial court is uniquely qualified to determine the nature and the extent of that entitlement, this court is exclusively authorized to adjudicate the impact of that entitlement upon any property subject to the claims of other creditors of the estate. Upon the filing of the Chapter 7 all of the property of the debtor becomes property of the estate. (11 U.S.C. § 541). Since no equitable distribution award had vested at the time of the filing of the petition, the debtor's property came into the estate free of the claims of the spouse. Therefore, the scope of the enforcement of the rights recognized or created by the matrimonial court, to the extent that they affect property of the estate, is the sole and exclusive province of this court.

Alternatively phrased, the filing of a title 11 case creates an estate whose property rights vest as of the date of the filing of the petition. 11 U.S.C. § 541. Where the spouse's equitable distribution rights vest at some time subsequent thereto, her rights, if any, are subject to the distributions and priorities mandated by the bankruptcy code. *See* 11 U.S.C. § 507. Since the code gives her no right to a distribution of property of the estate superior to that of any other unsecured creditor, the bankruptcy court must supervise her entitlement in order to ensure the equality of distribution mandated by law.

Therefore, the stay imposed by 11 U.S.C. § 362 as it applies to an adjudication by the

matrimonial court of the rights, obligations, duties, and property interests of Angela Palmer, and the issue of the marriage, is hereby vacated. The stay is continued, however, with regard to enforcement of any decree of the matrimonial court to the extent that it awards property of the estate to any entity other than the debtor. Any distribution of property of the estate shall proceed only in this court pursuant to the applicable provisions of title 11.

To the extent of any such award by the matrimonial court, this court shall then determine the dollar value of any right in property of the estate (giving, of course, due regard to proper findings, if any, of the matrimonial court with respect to such valuation) and if the recipient of such matrimonial award has timely filed a claim in this proceeding, it shall be allowed to the extent that the value of the award would otherwise be a charge upon property of the estate. The time for any such person to file a claim in this proceeding is hereby extended up to and including the sixtieth (60th) day after entry of the award by the matrimonial court.

Upon the trustee's liquidation of the property of the estate in accordance with 11 U.S.C. § 725 and resolution of all pending claims, a distribution of the estate shall be made in accordance with 11 U.S.C. § 726.

Accordingly, it is

ORDERED, that the stay is vacated to permit an adjudication by the matrimonial court of the rights, obligations duties and property interests of the non-debtor spouse. The stay, however, remains in full force and effect regarding enforcement of those rights as it affects property of the estate.