In re Robert Arnold **ROBERGE,**
**Sr., Debtor.**

**Kay M. ROBERGE, Plaintiff,**

v.

Robert Arnold **ROBERGE,**
**Sr., Defendant.**

Bankruptcy Nos. 94–32674–S, 94–820.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

April 25, 1995.

---

**856**

Bruce E. Arkema, Russell, Cantor, Arkema & Edmonds, Richmond, VA, for plaintiff.

William C. Parkinson, Richmond, VA, for defendant.

Bruce H. Matson, William A. Broscious, LeClair, Ryan, Joynes, Epps & Framme, P.C., Richmond, VA, for trustee.

### MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes before the Court upon a motion by Kay M. Roberge, the Debtor's former spouse, for relief from the automatic stay. Mrs. Roberge seeks relief so that a Florida court may apply Florida equitable distribution law in a partition action to establish the Debtor's interest in the marital home belonging to the Plaintiff and the Debtor as tenants in common.

Upon consideration of the evidence and arguments of counsel presented at a hearing on January 23, 1995, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The Plaintiff, Kay M. Roberge, is the former wife of the Debtor, Robert Roberge. In 1991, the Debtor left his wife and moved to Virginia. In May of 1994, Mr. and Mrs. Roberge were legally divorced pursuant to a decree of a Virginia state court. Prior to their divorce, Mr. and Mrs. Roberge owned certain real property in Florida ("the Florida property") as tenants by the entirety. Under Florida law, the divorce had the effect of converting their ownership interests in this property from tenants by the entirety to tenants in common. Fla.Stat.Ann. § 689.15 (West 1994). While the Virginia court had jurisdiction to grant the divorce, it did not have *in rem* jurisdiction over the Florida property. For this reason, no distribution of the marital estate was made by the Virginia court.

In July of 1994, Mr. Roberge filed a petition for relief under Chapter 7 of the Bankruptcy Code. Upon the filing of the case, automatic stay took effect pursuant to 11 U.S.C. § 362.

Mrs. Roberge was scheduled as a creditor and properly served with notice of the bankruptcy. Subsequent to the filing of the Chapter 7 case, Mrs. Roberge filed a partition suit in a Florida state court, seeking equitable distribution of the marital estate, including the Florida property. Mrs. Roberge now moves for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d), in order to proceed with her suit, to which the Trustee and Debtor object.

### CONCLUSIONS OF LAW

The filing of a bankruptcy petition creates an estate that consists primarily of all the legal and equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C.A. § 541 (West 1993). Therefore, a debtor's interest in property that is jointly owned with a non-debtor spouse becomes the property of the bankrupt estate upon the filing of a bankruptcy petition. *In re Becker*, 136 B.R. 113, 115 (Bankr. D.N.J.1992).

Pursuant to 28 U.S.C. § 1334, the bankruptcy court has "*exclusive* jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate." 28 U.S.C.A. § 1334(d) (West 1993) (emphasis added); *see also Murray v. Murray (In re Murray)*, 31 B.R. 499, 501 (Bankr.E.D.Pa. 1983). This grant of jurisdiction indicates a conscious effort by Congress to provide the bankruptcy court special jurisdiction, and to preclude jurisdictional disputes between

state and federal courts when both courts base jurisdiction on control of the same property. *White v. White (In re White)*, 851 F.2d 170, 172–73 (6th Cir.1988) (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 445, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6400).

■■■ The filing of a bankruptcy petition also operates as an automatic stay of judicial proceedings and acts to "exercise control over the property of the estate." 11 U.S.C.A. § 362(a) (West 1993).[1] Thus, in a divorce case, the filing of a bankruptcy petition stays the equitable distribution of a debtor's interest in marital assets.[2] *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir.1994); *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 344 (4th Cir.1992); *Becker*, 136 B.R. at 115.

■■■ Congress has granted broad discretion to bankruptcy courts to lift the automatic stay to permit enforcement of rights against property of the estate. *Claughton*, 33 F.3d at 5. Section 362 provides: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [§ 362(a) ], such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause...." 11 U.S.C.A. § 362(d)(1) (West 1993). Because the Code provides no clear definition of what constitutes "cause," discretionary relief from the stay must be determined on a case-by-case basis. *Claughton*, 33 F.3d at 5; *Robbins*, 964 F.2d at 345; 2 *Collier on Bankruptcy* § 362.07[1], at 362–68 to 69 (15th ed. 1992).

The Plaintiff argues that this Court should grant relief from the stay because the Florida court is in the best position to determine, under Florida law, the property interests of the Debtor's estate. The issue before this Court is whether it is appropriate, in this instance, to defer to the Florida court to determine the interest of the Debtor's estate in the Florida property.

■■■ As a general proposition, "[p]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The question of what constitutes the property of a bankrupt estate, however, is ultimately a federal question. *Id.; Matter of Jones*, 768 F.2d 923, 927 (7th Cir.1985); *N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons)*, 772 F.2d 462, 466 (8th Cir.1985). Under Florida equitable distribution law, the state court may divide property between spouses without regard to the fact that up until that time each held a one-half interest. Fla.Stat.Ann. § 61.075 (West 1995). However, under Florida law, transfers of property interests through equitable distribution are subject to prior perfected liens. *Id.* As a matter of federal law, the trustee has the rights of a hypothetical judgment creditor who levies on the debtor's property as of the date the bankruptcy petition is filed. 11 U.S.C.A. § 544 (West 1993).[3] In other

---

1. The automatic stay of § 362 bars the commencement of:

 (1) ... a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ... (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate....
 11 U.S.C.A. § 362(a)(1), (3) (West 1993).

2. Section 362 does not stay *all* aspects of divorce case. Certain aspects of a divorce case, such as dissolution of the marriage, child custody issues, and "collection of alimony, maintenance, and support" from post petition earnings are not stayed. 11 U.S.C.A. § 362(b)(2) (West 1993);

*Becker*, 136 B.R. at 115–16; *Schock v. Schock (In re Schock)*, 37 B.R. 399, 400 (Bankr.D.N.D. 1984); *Cunningham v. Cunningham (In re Cunningham)*, 9 B.R. 70, 71 (Bankr.D.N.M.1981).

3. 11 U.S.C.A. § 544 provides in part:

 The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists....
 11 U.S.C.A. § 544(a)(1) (West 1993).

words, by operation of law, the trustee is deemed to have a lien on the debtor's one-half interest in jointly owned marital property. *See, e.g., Polliard v. Polliard (In re Polliard),* 152 B.R. 51, 55 (Bankr.W.D.Pa. 1993); *Perlow v. Perlow,* 128 B.R. 412, 415 (E.D.N.C.1991); *Mueller v. Youmans (In re Youmans),* 117 B.R. 113, 121 n. 8 (Bankr. D.N.J.1990). Because equitable distribution is subject to perfected liens, and the trustee is deemed to be a judgment creditor, equitable distribution does not alter the bankruptcy estate's one-half interest in a jointly-owned marital residence. *Polliard,* 152 B.R. at 55; *Youmans,* 117 B.R. at 121 n. 8.

Not only does the trustee stand in the position of a hypothetical judgment lien creditor, but he also enjoys the power to convey both the estate's interest and the interest of any co-owners of certain real property of the estate if specific conditions are met. 11 U.S.C.A. § 363(h) (West 1993).[4] In the instant case, the Debtor's undivided tenant in common interest in the Florida property became the property of the bankruptcy estate upon the filing of the bankruptcy petition. Since that time, the Trustee has been authorized, subject to this Court's approval, to sell 100% of the Florida property without regard to the Plaintiff's consent or the provisions of Florida divorce law. Because the Code is clear that the Trustee is only limited by the conditions given in § 363 of the Code, and not any applicable non-bankruptcy law, Florida equitable distribution law does not alter the power of the Trustee. *See, Murray,* 31 B.R. at 502.

Some courts facing this same issue have granted relief from stay to have the amount of the claim fixed in state court, while retaining jurisdiction over the subsequent distribution from the bankruptcy estate to be made on the claim. *See, e.g., Robbins,* 964 F.2d at 346. As some measure of protection for creditors of the bankruptcy estate, these courts have instructed that the creditors or the trustee participate in the state court proceedings. *See, e.g., Hohenberg v. Hohenberg (In re Hohenberg),* 143 B.R. 480, 489–90 (Bankr.W.D.Tenn.1992). Courts have also prohibited consensual agreements between the debtor and the ex-spouse to prevent collusion to the detriment of the creditors. *See id.* at 488.

These measures, however, provide only minimal protection to the debtor's creditors. *Polliard,* 152 B.R. at 55. First, the creditors are not parties to the divorce case and there is presumably no reason for the state court to consider the creditors' interests. Furthermore, there is a question as to whether the creditors have standing to participate in the state court proceeding. *Id.; In re Wilson,* 85 B.R. 722, 729 (Bankr.E.D.Pa.1988). Second, when a bankruptcy court retains jurisdiction over the distribution, the question remains whether that court can review or reject the allocation of the marital estate once the automatic stay has been lifted and the state court has fixed the ex-spouse's rights.[5] *Polliard,* 152 B.R. at 55; *Becker,* 136 B.R. at 120. Finally, if relief is granted, there is the concern that the parties may enter into a consent judgment providing for a distribution of property interests that is collusive or fraudulent as to the interests of the debtor's creditors. *See White,* 851 F.2d at 174. These many concerns regarding protection of the creditor's interests raise the question as to whether it is *ever* appropriate for the bankruptcy court to grant relief from stay to permit the amount of the ex-spouse's

---

4. The relevant portions of § 363(h) allow the trustee to sell the estate's interest and the interest of any co-owner if:
 (1) partition in kind of such property among the estate and such co-owners is impracticable;
 (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
 (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such so-owners. . . .

11 U.S.C.A. § 363(h) (West 1993).

5. At least one Court of Appeals has questioned whether the bankruptcy court can modify a state court determination. The Sixth Circuit stated in *In re White,* "[W]e are not sure that [the bankruptcy court] can review or reject the state court's action in allocation of the marital stay once the stay is lifted. This, therefore, represents some abrogation of the bankruptcy court's authority, at least as far as its ability to determine the rights in marital property." *White,* 851 F.2d at 173.

claim to be fixed in state court. *Youmans*, 117 B.R. at 121 n. 8.

In support of her motion, the Plaintiff cites *Robbins v. Robbins*, 964 F.2d 342. There, the Fourth Circuit affirmed the bankruptcy court's decision to lift the stay in order to allow a state court divorce action to continue. The Plaintiff's reliance on *Robbins* is misplaced, however, given the factual background of that case. *Robbins* originated from a dispute concerning the equitable distribution of a stock asset between a former husband and wife. After the parties were divorced, the marital property, including the stock, was divided under Florida equitable distribution law. *Id.* at 343. The Florida Court of Appeals reversed the portion of the trial court decree that granted each party an undivided one-half interest in the stock, and held that the plaintiff was entitled to the cash value of the stock. *Id.* On remand, the parties agreed to have the issue heard by a special master in lieu of trial, stipulating that the master's disposition would be presented to the trial judge solely for signature. *Id.* After the master's determination, but before the trial court could enter judgment, the defendant filed a Chapter 11 bankruptcy petition. *Id.*

In evaluating the bankruptcy court's decision to lift the automatic stay and allow the trial court to enter judgment, the *Robbins* court set forth three factors that courts should consider in deciding whether to lift the automatic stay:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected prop-

erly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Robbins*, 964 F.2d at 345. Applying the three factors to the facts before it, the court in *Robbins* concluded that the bankruptcy court "correctly placed the equitable distribution disputes in the category of cases in which state courts have a special expertise and for which federal courts owe significant deference." *Id.* at 345.

The sequence of events in the present case, however, differs from that of *Robbins*, and therefore produces distinguishable interests to be protected. *See Hohenberg*, 143 B.R. at 485. Here, unlike in *Robbins*, the bankruptcy petition was filed *prior* to the equitable distribution suit. "The bankruptcy estate was created first, thereby making the property included subject to the Debtor's creditors." *See id.; Elrod v. Elrod (In re Elrod)*, 91 B.R. 187, 189 (Bankr.M.D.Ga. 1988). Once the bankruptcy estate was created, Mr. Roberge lost any interest he held in the property which had then become property of the estate. In contrast, the Florida court in *Robbins* had, two years before the filing of the bankruptcy, determined that the non-debtor spouse was entitled to a one-half interest in a stock asset. The non-debtor's property interest had already vested prior to the filing of the bankruptcy case. The sole issue for the Florida court upon lifting of the automatic stay was simply a determination of the cash value of the one-half interest in the stock.[6]

To the extent that the *Robbins* analysis may be relevant to the facts of this case, the three factor test does not require this Court to grant relief from stay. First, the issue of what constitutes the estate of the Debtor does not involve any complex questions of state law other than mere reference to Florida Statute § 689.15.[7] All of the remaining

---

**6.** Other cases in which courts have allowed relief from stay have also involved circumstances in which the non-debtor spouse's property interest had vested prior to the filing of the bankruptcy petition. *See, e.g., In re White*, 851 F.2d 170 (6th Cir.1988) (granting relief where divorce proceeding had already begun in a state court which had prior *in rem* jurisdiction over the property of the

debtor); *Claughton v. Mixson*, 33 F.3d 4 (4th Cir.1994) (granting relief where equitable distribution had already been made but final order was not entered).

**7.** Section 689.15 provides that "in cases of estates by entirety, the tenants, upon dissolution of

issues in this case require the expertise of the bankruptcy court. Second, it does not serve judicial economy to allow state courts to rule on federal bankruptcy matters. Moreover, there is no risk of interference with the bankruptcy case because there are no state law matters with respect to the ownership of the Florida property to be litigated in this Court. In fact, if this Court were to grant relief, the equitable distribution of the Florida property could greatly interfere with distribution of the bankruptcy estate to the creditors. Third, it is uncertain if the bankruptcy estate could be adequately protected in the Florida proceeding, because it is questionable whether the Trustee and creditors would have standing, or whether this Court could modify a distribution that awarded the entire Florida property to the Plaintiff.

 This Court considers motions for relief from stay on a case-by-case basis, balancing the potential prejudice to the bankrupt debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied. *Robbins*, 964 F.2d at 345. While it is true that controversies relating to matters of domestic relations have traditionally been left to the states, this Court sees no benefit in allowing a Florida court to make a finding as to the ownership interests in the Florida property vis-a-vis the Debtor and Mrs. Roberge. Such a finding, quite simply, would have no effect on this Court, given that the Debtor's 50% interest in the Florida property is now, and has been since the date of the petition, a part of the bankruptcy estate. As of the date of the bankruptcy petition, no equitable distribution proceeding had been instituted by Mrs. Roberge. Therefore, there is no question for which the Florida court is "uniquely capable" of determining with respect to the extent of the parties' interest in the Florida property. *Robbins*, 964 F.2d at 346. Accordingly, this Court finds that cause does not exist to justify relief from the automatic stay in this instance.

This Court's denial of relief from stay is in accord with its previous holding in *Ames v. Benyola (In re Benyola)*, 136 B.R. 646

(Bankr.E.D.Va.1992), which was affirmed by the United States District Court for the Eastern District of Virginia. There, as in this case, the debtor's bankruptcy petition was filed prior to the state court equitable distribution proceeding. In an unreported opinion, the district court held that "a state court equitable distribution judgment entered after the commencement of [the debtor's] bankruptcy proceedings would have no effect on the determination of the bankruptcy estate's interest in the [debtor's] property. Accordingly, the bankruptcy court's denial of relief from the automatic stay is hereby affirmed." *In re Benyola*, Ch. 7 Case No. 3:92CV486, Adv. No. 91–3039–S, slip op. at 7, 1993 WL 777031 (E.D.Va. Mar. 19, 1993). This Court sees no reason to depart from the analysis employed by the district court.

For the aforementioned reasons, the Plaintiff's motion for relief from automatic stay should be denied. The Court will enter an Order in accordance with its Memorandum Opinion.

---

marriage, shall become tenants in common."

Fla.Stat.Ann. § 689.15 (West 1994).